Case number 20-7080. Agudas Chasidei Chabad of the United States, a non-profit religious corporation versus Russian Federation, a foreign state et al., 10x USA Incorporated, appellant. Ms. Kanaki for the appellant, standing and jurisdictional finality. Mr. Rosenberg for the appellant, injunctions, sanctions, and interpretation of 1605A3. Mr. Lieberman for the appellees. Good morning, counsel. Ms. Kanaki, please proceed when you're ready. Good morning, your honors, and may it please the court. I'm here on behalf of 10x USA or 10M, a third-party recipient of a post-judgment subpoena and the Rule 60B movement below. In 2010, the district court entered a default judgment against the Russian defendants that found jurisdiction under the FSIA Section 1605A3 for Chabad's claims. This decision was wrong. At a minimum with respect to the claims against the Russian Federation. Because the property at issue in the dispute is located outside the United States, there was no basis for subject matter jurisdiction over Chabad's claims as to the Russian Federation, and the default judgment as to the Russian Federation was therefore void. Because that decision was void, the injunction was void, the sanctions were void, and thus the subpoena served on my client 10M to begin execution of the sanctions is also void. Chabad's subpoena is premised on the allegation that 10M, a Maryland company in the nuclear energy sector, possesses assets of the Russian Federation. Chabad specifically even seeks information about 10M's own assets. On the purported premise that 10M is the alter ego of the Russian Federation. 10M strongly denies this, but that is the basis for the relevance of the subpoena. I thought it had alternative theories in its subpoena, one of which was alter ego. So it wanted to know what assets 10M had, and then what its relationship was as well. Right, on the purported basis that 10M is connected as the alter ego of the Russian Federation, the subpoena doesn't just, it's not like an information subpoena of say a bank asking about information about Russia. The information the subpoena is seeking is about 10M, and 10M's assets, 10M's commercial activities, 10M's communications with its parent companies, all the way up to the Russian Federation. What you're arguing about in this part of the case, if the judgment in Chabad 1 is upheld by us, doesn't everything you're arguing go away then? Because the steps you took each depend upon doing away with that final judgment. Did I misunderstand? With all due respect, Your Honor, just to clarify, the 2006 district court opinion and then the 2008 decision of this court that affirmed in part and reversed in part, neither were a final judgment. It was a granting in part and denying in part motion to dismiss, and then the court of appeals reversed on some grounds. That decision, neither of those decisions established with any sort of finality jurisdiction over the Russian Federation, and we know this for several reasons. First, this court held in the Dishevel case that the 2008 decision... Leave out the other cases, just dealing with that case at the moment. What was unfinal about the decision with respect to the immunity of the aspects, Your Honor? And we know this by looking at the 2010 default judgment entered by the district court. In that decision, the court addressed all of the jurisdictional elements again, in part because in 2006, it had only applied the non-frivolous test. And then also, it addressed new jurisdictional elements that hadn't been addressed at all in 2006. For example, whether the alleged agency and instrumentalities were in fact agencies or instrumentalities. That was a critical jurisdictional element that was completely unaddressed in 2006, and the district court found that it needed to still get to that question. There was nothing about jurisdiction in 2006 or in 2008 that was final and established. That decision was only made with respect to any finality in 2010 in the default context. And because that decision was a default, the Russian defendants were not participating. The Chabad had clearly sought a motion for entry of a default judgment, and that is what the court granted. This case then falls squarely into the Bell Helicopter and Practical Concepts and Sudan B. Owen line of jurisdictional review. So the question in this... The question before us right now concerns whether 60B is the right way to bring this up. Because even if you're right, let's just, just for purposes of this, let's just assume that you're right, that there's a jurisdictional objection that could be made. That there was an opportunity to do that, as you point out in your briefing, in your own briefing, by filing a motion to quash. That didn't happen. And so then there was a 60B motion. And the question is, are you situated to bring the 60B motion? Because if you're not, then I think you agree that you don't have a route now. You have to be a party that can actually raise the 60B. And under 60B, just everything about the terms of the rule seems to contemplate that it's a party to the underlying judgment. Now, I'm not, I'm not disputing that the underlying judgment has some effect on you, because I get that, that it's a consequence of the underlying judgment that you're then within the range of a subpoena. But you're not actually the party. And it's difficult to see you as a legal representative, at least in the normal way we think about legal representatives, which is a trustee or somebody who's actually standing in the shoes of the party. And then, if I thought that that's all 60B covered, then I'm not sure I see how you have authority to bring this before the district court and before us. And in service of the proposition that I do, that may be all that the rule covers, when I look at the rule, it talks about the parties in a number of situations. For example, 60B-3 talks about whether there's fraud, misrepresentation, or misconduct by an opposing party, which talks about whether the party who supposedly considered the fraud is opposed to the party. It talks about newly discovered evidence, which by nature refers to actions of the party to the underlying judgment. And then the text, which you've engaged on, may relieve a party or its legal representative, seems to make it an issue of whether you as yourself can rely on 60B. Yeah. At least three points on that, Your Honor. So first, as to whether that was raised in our motion to quash, the district court recognized that jurisdictional issues were raised in our motion to quash, that's at JA-798, and said that TENM had been raising jurisdictional issues. And so when TENM sought certification of denial of its motion to quash under 1292B, that court did engage on the exact jurisdictional arguments that we sought to certify for appeal, specifically this issue of whether Russia satisfied 1605A-3, the B-1 prongs, if you will. Second, that motion to quash was denied, and it was referred to earlier today. The alternative is to wait for sanctions, which was something that we could not do. And those sanctions provide further reason why TENM is strongly affected by the judgment, the threat of such sanctions. And then three, turning to the text of Rule 60B. On the motion to quash, if there's a jurisdictional objection to the motion to quash on the basis that there's not subject matter jurisdiction in the underlying suit, and that's rejected, then that's something that can be appealed. That's presumably something that can be appealed. Right, and we sought certification of... No, not certification. I mean, are you talking about 1292B certification? Yeah. When the motion to quash was denied, our understanding was that if that decision was not certified for appeal, then we needed to wait until there was a decision compelling... And your understanding was based on what? I would have to get back to you on that. Right. I mean, that's the issue in the other case. And if we thought that collateral order review is available when a jurisdictional objection to a motion to quash is denied, then that's a route to take. Here, that didn't happen. I don't even know that it was raised in the motion to quash. But in any event, right now, all we have before us is the 60B route. And the 60B route, putting aside the motion to quash, requires that the party who brings it either a party or legal representative. Right. We were not trying to seek a collateral order appeal the way that DEB was, in that we were not asserting TENM's own immunity. And so that was why we didn't think that TENM had a direct appeal of the denial of the motion to quash. But I do want to move on to the text of Rule 60B to get to that part of your question. TENM, the rule itself is silent on who is the proper movement. And the courts, however, have held that a legal representative includes any party alleged to be in privity with the judgment debtor who would be relieved. Chabad's allegations with respect to TENM is exactly that, that there is some sort of a privity relationship. That's the fundamental basis of relevance of its denials. We've pointed to cases that show that when evaluating standing, including in the context of an issue and claim preclusion and in the context of a non-party, third-party intervener defendant. Who would be relieved? Under your theory, the text of the rule says the court may relieve a party or its legal representative from a final judgment order. Who would be relieved? On Chabad's allegation, certainly TENM would be relieved because TENM is alleged to be the alter ego. And so therefore it would- Not on the allegations, because I think the allegations, I understand your point about the allegations. The allegations just could cut both, could equally cut in the other direction too. If you flip it, it's a little bit difficult to attach, at least in my mind, too much significance to that because either side could make use of it. Well, TENM is the party that has been dragged in and is attempting to assert defenses to be relieved of compliance with the subpoena. So the opponent's allegations, just as in the case of a third-party intervener defendant movement, would you rely on the record that there is and the allegations from the opposing party? Obviously also the Russian Federation would be relieved from the judgment, but because Russia would be relieved from the judgment and TENM's only connection, the only relevance to the case at all is TENM's alleged relationship to Russia. There's no alleged relationship to the other parties. But if Russia needs to be relieved from the judgment, Russia can seek 60B relief, but it hasn't. And so you have to support the notion that you can bring the 60B relief. Beyond the privity, I'd just like to talk briefly about that. Privity is something more than simply being related in some fashion. Wouldn't privity require something close to being able to step into the shoes, like the legal representative normally means? Right, and that includes an alter ego. The only reason why TENM's assets could possibly be relevant in the suit is because Chabad is pursuing information about those assets in an attempt to, with the purpose of executing the judgment against TENM, not against Russian assets that TENM holds in its possession, but TENM's own assets. They're not attempting to execute against them at this point, are they? They're simply trying to find out what's there with the possibility that they may turn out to be traceable to Russia. Well, with all due respect, that's not what the subpoena is seeking. The subpoena is seeking information about what TENM possesses as to TENM's own assets, TENM's commercial activities, TENM's relationship with its own board of directors, its own commercial activities, its own activities in the United States. Well, you're not bringing anything concerning the breadth of the subpoena. That would be a matter of a motion to quash, I suppose, but you're not talking about the breadth of the subpoena. You're trying to look at the record as a whole. The only way that there is relevance, which the district court has already held when it denied our motion to quash, the only basis for relevance of this broad subpoena is that TENM is alleged, it's on the allegation that TENM is the alter ego. If TENM is not alleged to be the alter ego- You understand we start with a presumption of finality on jurisdiction from a judgment, and you're moving to set one aside. That's a heck of a burden, isn't it? Well, with respect to 60B4, the issue is not discretionary. If the judgment is void, then this court is without subject matter jurisdiction, and we would say that we would submit that this court is without subject matter jurisdiction to even reach the 60B because the court must assure itself of subject matter jurisdiction. In this case, there is no subject matter jurisdiction with respect to- I don't understand that point, that we're without jurisdiction even to decide whether a party can bring a 60B motion. Wouldn't that mean that any party in the world could bring a 60B motion, even if they have no relation whatsoever to the underlying suit, but then a court would have to decide the merits of the 60B motion without deciding whether the party could bring it? Here, TENM has no doubt, Article 3, if we were subpoenaed into the case, there is an allegation that TENM has to- The process has been served. TENM can satisfy the Article 3 standing, and in fact, post-judgment subpoena recipients, there's no doubt, can raise subject matter jurisdiction. The notion that this court has to address subject matter jurisdiction should not be controversial when a subpoena recipient raises subject matter jurisdiction. The notion that a third party can come in years later and attack the validity under the motion to set aside is the 60B motion is at least controversial. We understand it's not a frequent occurrence, but there's no doubt in this case that TENM can raise the argument that there is no subject matter jurisdiction. That is the Vera case- If you can bring the case at all, perhaps you could, but the question we're raising is whether you can bring a 60B motion on the basis of what you have here. Right, and we think we've satisfied the standing for the privity argument, and then the other point which I wanted to add is that TENM is strongly affected by the judgment. I point out, in a very unique circumstance here, the subpoena is targeting TENM's assets, but TENM, there's no allegation that TENM could ever satisfy the injunction. This is a very unique circumstance, so that those sanctions, the $50,000 a day sanctions, will just continue to add up, add up, add up, targeting TENM's assets, but TENM has no way to satisfy the injunction. That is a unique one-off circumstance in which TENM is strongly affected. I don't doubt, for my purposes, I don't doubt that TENM is affected. Of course they're affected because the subpoena is directed against you as a consequence of the previous judgment. The question is whether your jurisdictional objection is properly asserted by a Rule 60B as opposed to via a motion to quash, which you yourself in your briefing point out is a route, and I think that's the question that's before us under Rule 60B. Let me make sure that my colleagues don't have additional questions for you on these questions that you have, because I know your colleague on your same side still has an argument to make on some other issues. Okay, then why don't we hear from Mr. Riesenberg for now, and we'll give whichever one of you is going to take it a little bit of time for rebuttal. Thank you, Your Honor. Mr. Riesenberg. May it please the Court. We now turn to the injunction and the contempt sanctions pursuant to which TENM has been subpoenaed in relation to, quote, TENM's own assets, end quote, and then again that's from the transcript, that's a statement by opposing counsel. So the U.S. government has repeatedly described the remedies in this case, the injunction and the contempt sanctions as, quote, entirely without precedent internationally, end quote, including at page 141 of the joint appendix. Neither Chabad nor the district court have ever identified any prior case by any court anywhere in the world, including in the United States, but nowhere else in the world where any court has imposed an extraterritorial turnover order against a foreign sovereign state. It is entirely anomalous. This unprecedented exercise of judicial power is literally, quote, an extraordinary circumstance, end quote, which would justify TENM's request for relief under 60B. The district court's orders should be vacated, therefore, including because they are contrary to the Foreign Sovereign Immunities Act, including the comprehensive scheme for addressing the property of foreign sovereign states, and the public interest, which is a requirement of any injunctive order, whether it's a permanent injunction or a preliminary injunction. The district court in its 2010 order entirely skipped consideration of the public interest in violation of its statutory duty under 28 U.S.C. 1608E to evaluate Chabad's, quote, right to relief. For all these reasons, both the injunctive order and the sanctions should be vacated, as well as all the subpoenas attempting to seek information pursuant thereto. So I'll first start by looking at the statutory aspect, meaning the interpretation of 1609 and 1610. Now, the U.S. government, at page 135 of the joint appendix, draws our attention to the pre-enactment history of the Foreign Sovereign Immunities Act. Now, prior to the FSIA, the property of a foreign state was immune from execution everywhere in the world without geographical limitation. Are you referencing the Green brief? Meaning Mr. Feldman's amicus brief? Yes. Judge Rogers, just to clarify? Yes, as opposed to and it's not clear to me what remains. I'm referring to the statements of interest filed at page 135. Right, but it hasn't filed an amicus brief, correct? And at some point, circumstances changed? Well, this position that the United States government has taken, in this case, has been consistent across presidential administrations. I wasn't suggesting an administration change made a difference. I think circumstances have changed, given what the district court has done. Well, most recently, the U.S. government maintained its consistent position in December of 2019. We're not aware of any change in position. It is certainly not too late for this court to ask the U.S. government's views. That's something that this court has discretion to do, and 10M would have no objection whatsoever. But you have not requested that we do so. That I noted in your brief, all right? But in any event, your position is the United States thinks, what, foreign policy would be better off if this case stopped? Well, the U.S. government would not be subject to a $135M contempt sanctions order by a foreign court. And the U.S. government's arguments in foreign court would not be undermined in any of the, going by the numbers in the Helmrich decision by the Supreme Court. So the answer to my question is yes. Yes, it's a strong yes, Judge Rogers. The U.S. government needs to defend against the orders of foreign courts in 1,000 cases at any given time before 100 courts in the world. And undermining the U.S. government's defenses with respect to injunctive orders and contempt sanctions is strongly contrary to foreign policy. That is a public interest issue, and the district court gave it short shrift when it ordered injunctive relief in this case. Of course, that's different from not considering the matter. It's improperly weighing the factors, which is frequently the way this district court has described, the way this district court has described abuse of discretion. Also, I want to distinguish between the district court's discussion of public interest in 2015 when the contempt sanctions were issued, and the 2010 order where the district court did not discuss any issues of merits or remedies or the public interest aspect of the injunction whatsoever. There is not one word in the 2010 order addressing the public interest as required for injunctive relief. But this is the issue of the public interest, Judge Rogers, and that's only one of the issues that we're raising today. We're, of course, also pointing out the violations of the Foreign Sovereign Immunities Act, particularly the comprehensive statutory scheme, which under 160910 and 1610 abrogates foreign sovereigns' execution immunity only with respect to property in the United States. There is no abrogation of the immunity to which property is entitled outside the United States, and that's not just a diplomatic nicety, but a judicially enforceable norm, as the case law from before the FSIA shows very clearly. For example, I would point out the Dexter case at 43 F. Second 705. And then one final point before I reserve the remainder of our time for rebuttal or await any of your other questions. 1606, 28 U.S.C. 1606 is the pillar of the district court's conclusions, the pillar of Chabad's argument. That's where they say the power to order extraterritorial injunctions comes from. 1606 doesn't refer to remedies at all. It says that a foreign state shall be, quote, liable to the same extent as a private party. That is not a textual discussion of remedies whatsoever. And to apply that to justify extraterritorial injunctions, which have never occurred in the history of this country or any other, would be a violation of the canon against the extraterritorial application of law, which the Supreme Court emphasized in Kiobel, Morrison, RJR Nimbisco, and numerous cases. You may well be correct as to the merits of your cause, but doesn't it go back still to the issue that your colleague argued as to whether 60B appeal, 60B is available to you, and therefore this appeal is available? It certainly, yes. For these arguments, there is no question we would need standing. But it's not exactly the same as traditional Article III standing. It's a finality of judgment issue. Well, Judge Sentelle, I would draw your attention to the Second Circuit's decision in Grace, which was also a case involving a final judgment. So all of the presumptions that you've described would also be applicable to the Second Circuit's decision in Grace. The reason why the movement in that case had standing was because the opposing party's strategy was, quote, to collect money from the movement, end quote. On that basis, the Second Circuit said general principles of standing make this motion under Rule 60B appropriate. In this case, Chabad is trying to collect money from Tenem. Well, let me just be clear about one thing. I mean, I know you say the case isn't relevant at all, but at least there is a distinction here between trying to find out what assets VEB has and whether there is any authority to attach those assets. And the latter has not happened yet. It hasn't happened, Judge Rogers, but standing is almost always evaluated based on the allegations at the outset of a lawsuit. Well, there's where you're hurting yourself because the district court said it couldn't order the type of relief you want, all right, because it would have no authority to do so under Rule 60B. And to that extent, applying a statutory standing analysis, the third prong of standing would drop out. I just want to quote the district court, Judge Rogers. I'm quoting the district court. Understood. Just to supplement that quote, the district court said that there was no serious argument that Chabad stands in the... Sorry, apologies. There is no serious argument that Tenem stands in the shoes of the Russian Federation. We found that quote remarkable because that is precisely Chabad's argument. Whether it's serious or not, Chabad says that we do stand in the shoes of the Russian Federation. That's why they're trying to to the district judge. And that is their argument. And that should be sufficient to give us standing to provide any legal arguments that correspond to their theory of the case, including under Rule 60B. And we'll reserve the remainder of our time for rebuttal unless there are further questions. There are no further questions. Thank you, Mr. Rosenberg. We'll give a little bit of time for rebuttal. Mr. Lieberman, we'll hear from you now. May it please the court. Good morning again. I'm going to try to address the issues raised by Tenem in the following fashion, subject, of course, to the order in which the court wishes to go into these issues. First, I'd like to discuss the 60B issue. Then I'd like to go into the jurisdictional finality issue, which has been raised by Tenem. And then I'd like to turn to some of the merits issues. But first, I do want to correct one point that was made by Mr. Rosenberg or his colleague in response to Judge Rogers' question. There are two theories that underlay the subpoena to Tenem. One was the question of whether or not Tenem was an alter ego of the Russian Federation. And the second was whether Tenem holds assets of Russian Federation, which could potentially be subject to execution, that is Russian-owned property. Now, starting with Rule 60B, we start obviously with the language of the statute of party or its legal representative. I don't think there's a serious question that Tenem is not a legal representative of Russia. It seems to be that what it's trying to do is to get a vacator of the actual ruling against Russia. But they're not a legal representative of Russia under Rule 60B. The language of Rule 60B, as Judge Lamberth pointed out, they do not have the right to which an entity that was not a third party that was a recipient of discovery. They challenged the validity of an underlying judgment. They cite two cases, Vera versus the Republic of Cuba. That wasn't a Rule 60B case. But it was also a case where there was a default judgment against Cuba. Cuba never appeared at all. Cuba followed the practical concepts option two scenario that was sketched out by Justice Ginsburg in her decision and practical concepts. The other case that they cite, the only other cases is Housing Business Journal versus Office of the Comptroller case. That was also not a Rule 60B decision. It was a pending lawsuit, where there was a subpoena to a third party, which was permitted to challenge the district court subject matter jurisdiction. They've cited no Rule 60B cases where they should be considered a representative. As the Chief Judge's question about relying on pleadings and positions the parties take with respect to the availability of 60B relief made clear, that's a two-edged sword. If Tenem is taken at its word, that it should be considered a representative or a privy of Russia, then under principles of issue and judgment preclusion, they are stopped under res judicata, as well as jurisdictional finality. It would be precluded under principles of res judicata, challenging the underlying judgment. Let's recall here, this is a case in which Russia appeared, litigated for several years, lost in part and won in part in sovereign immunity and the district court, took an appeal and on appeal, the portion that it had lost below was reversed. That's with respect to the archive. The portion that it had won below with respect to the library was reversed on sovereign immunity issues. It went back to the district court and continued to participate in the litigation. For a year, when faced with discovery to which it needed to respond, it then withdrew. This is a practical concepts option one case. Russia appeared, it fought on jurisdiction, it lost. It's a final judgment. Just on res judicata, if they are a representative, which they would need to argue to get up under 60B, then they lose under res judicata. If they're not a representative- Let's just say for argument purposes, and I'm not saying that I necessarily agree with this but let's just say for argument purposes that we accept your position that TENM cannot bring the 60B motion because it's not a part of your legal representative. Let's just also say, and I know you'll resist this but just bear with me, let's just also say that they're right about the appropriate reading of the statute of 1605A3 and therefore there wasn't jurisdiction and to issue the underlying default judgment. What are they supposed to do? Okay, so I am so happy you asked that question, Ron, because it leads right into the question of jurisdictional finality. I want to put aside for a second, I would like to discuss this if the court is interested in the issue, as to whether this court in its Chabad decision in 2008 properly interpreted section 1605A3, but I don't want to deal with that right at the moment. Let's assume, pursuant to your honor's question, that this court follows the four subsequent decisions of the D.C. Circuit and says the Chabad court got it wrong. We dispute that and I'd like to get to that point but I'm going to answer your honor's question. So there are two separate questions. One is, is this court's decision in Chabad one that was sufficiently articulated and described? Can I just ask you just to get a quick answer at least on one part of it, which is is there anything they could do? No. You think there's nothing they can do? So even if the Deciple reading of 1605A3 is taken to be correct, I know you don't think it was correct, but for our purposes it's the precedent that's on point at this juncture in time, then the underlying judgment was issued without subject matter jurisdiction and Tenem has never had an opportunity to make that argument because it wasn't ever in the initial case. That was Russia in the initial case. So a party that was never in the initial case and is now totally affected by the judgment, your view is that there's nothing they can do about it? Nothing they can do may be too strong because, for example, there are lots of types of property that are immune under the statute from attachment. There are all sorts of arguments that they can make that they're not an alter ego of Russia. If they win on not being an alter ego of Russia, there's nothing they can do to take on the existence of jurisdiction to issue the underlying judgment that then begets your efforts to obtain relief against them. That's correct, and let me explain exactly why. And what about the doctrine that says that you can defend against a subpoena, you can quash a subpoena based on the lack of subject matter jurisdiction to issue the underlying judgment? So this court in Chabad, and I don't think there's any doubt about this, if you look at the decessible majority opinion, the majority opinion does not dispute that the DC circuit in Chabad made a decision that the Russian Federation was not immune with respect to either the archive or the library. The issue in decessible is whether or not the sufficient expansiveness that it should be entitled to precedential effect in the circuit. But the decision was made. It went back down. When it went back down, the district court made the appropriate findings to enter a final judgment. At that point, Russia had withdrawn, but they had decided to exercise practical concepts. Option one, they fought on the issue. That judgment is final with respect to sovereign immunity for purposes of this case. So suppose that in deceptible, the cert petition was granted. And the Supreme Court in deceptible agrees with the view espoused by the United States and deceptible in its brief, which is that the deceptible view are our court's view of 16, I L five, a three and deceptible was correct. So now, then we know that the Supreme Court would have a precedent, just hypothetically, Supreme Court would have a precedent that says that the way Chabad one looked at it, turns out to have been incorrect. You'd still say that even though the Supreme Court precedent says that the jurisdictional basis of Chabad one was incorrect, that this party tenem, who has never had an opportunity to litigate that would be out of luck. That's absolutely correct. And it's the Supreme Court's decision in federated department stores upon which I would be relying. And also this court's decision in GSS group versus Liberia, both of which are discussed in our brief in GSS group versus Liberia. This quarter 2016 decision said once an issue was raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case. And in federated department stores, the Supreme Court said on jurisdictional finality, this is true, even if the judgment may have been wrong, arrested on a legal principle, subsequently overturned and another case. So even if the law changes, you've got jurisdictional finality in the Chabad case regarding sovereign immunity with respect to the Russian Federation. Now there are lots of other issues that tenem could challenge on. For example, statutorily exempt property, are they the alter ego or not? But if they are the alter ego, right? And this decision has been determined against the Russian Federation. They are bound by that. They are stuck. And it makes good sense that that would be the case because in this case, your honor, we have five or six or seven subpoenas out to different entities, including, you know, US banks that are holding Russian Federation assets. If every time we seek to enforce a subpoena, a non-party gets to come in and really relitigate the question that this court decided back in 2008, we would have chaos. And that's exactly why we have the jurisdictional finality doctrine. I hope that answer was clear and unambiguous enough, but I don't think tenem can challenge this issue. I don't think the Russian Federation can challenge this issue. I don't think anybody else can challenge this issue. In the Chabad case, it has been decided for this case. And going back to rule 60B, we've got to go by the language of that rule. The language is clear. They're not the party. They're not a representative. They make the argument about strongly affected rule has never been applied in this circuit. There is one decision by a district court on the strongly affected doctrine in this circuit, and the district court rejected strongly affected. And strongly affected came from the Grace case. And as Judge Lamberth pointed out below, and as many other courts have pointed out, including the Grace case itself, there was an exceedingly narrow exception to a well-established rule. And it was there to prevent a fraud perpetrated on the court to settle a third party with a judgment debt. That's what happened in Grace. And that's why the Second Circuit was so careful to say this was a very narrow exception. It cannot possibly be that tenem is seriously arguing that when Chabad brought this lawsuit to get back books that were first taken in 1917, that it's been fighting for 100 years to get these books back, that the reason it brought that lawsuit, the reason it brought the lawsuit and went to the district court and the DC Circuit on the sovereign immunity issue was to somehow stick tenem 12 years later. That's just not a argument. So they have no mechanism to challenge this under 60B. On jurisdictional finality, again, I think even if you were to decide in this case, and now I'd like to turn to the merits of the 1605A3 issue, if I may, Your Honor, but even if you would decide that you weren't going to jurisdictional finality doesn't allow for the judgment against the Russian Federation to be challenged in this case. And again, that's practical concepts. The law is, I would submit very, very clear on that. So let me turn to the question of whether or not the Chabad decision is one that this court needs to follow or alternatively, whether this is an issue as to which the court might want to refer this matter to an en banc panel. Are you sure you want to get into that? Well, let me start with this, Your Honor. First, Judge Lamberth wrote an extraordinarily clear and elegant 54-page decision explaining precisely why he believes that the DC Circuit is bound by the DC Circuit's decision in Chabad. We issued a decision in De Sapo that reached the decision conclusion that it did, and that's precedent in our court. Whether you agree with it or not, and I understand that there are arguments in both directions. That's a precedent in our court on what happens with the Chabad result going forward. I understand that unless this court issues a new decision with an iron's footnote. We'd have to go on, the full court would have to do something with it either by taking the issue en banc or by issuing an iron's footnote. Right. There's a lot of other issues in this case with respect to 6DB and everything that we'd have to get to before we'd ever get to something like that. Right. Now, my second point was, I think, explains precisely why the court need not reach that issue under jurisdictional finality, whether or not the decision was clearly enough articulated to be a precedential decision. It was a decision on the merits of a foreign sovereignty. We're not adjudicating today whether it should be precedent for other cases. What we're talking about in this one is binding here, and I'm just not sure you want to get into the, or drag us toward the prior patch on that. And your honor, I will exercise the wisdom to not make those arguments and simply refer the court to Judge Lambert's decision on that point, should the court think it needs to reach the issue. But again, if the court needs to reach the issue, this is a case that I think would very appropriate for en banc review, but you need not get there. Okay. If you prevail on other grounds. That's correct, your honor. Yes. All right. Well, you're not waiving anything, that's all I'm saying. No. If we lose on the other grounds and this court gets to the issue, for the reasons set forth in the brief, the reasons set forth in Judge Randolph's dissent in the DeChapelle case, for the reasons set forth in Judge Lambert's ruling, our view is that the proper interpretation of 1605A3 is the conclusion that Judge Lambert has come to, and the conclusion reflected in the judgment of the D.C. Circuit in the Chabad case. And if any of the panel would like, I'm happy to go into those substantive issues. But your honor, Judge Rogers is exactly correct. We're not waiving those issues at all. Okay. Let me make sure my colleagues don't have additional questions for you, Mr. Lieberman. Thank you. Thank you, your honor. For appellants, we'll give you two minutes back for rebuttal, and I know you were going to choose who's going to give the rebuttal. Thank you, your honor. Just to start, Mr. Lieberman said that this case would be tenem challenging the finality of the judgment or otherwise. This is a practical concepts option two case, because the entry of the 2010 default decision is the decision that took jurisdiction over the Russian Federation with any alleged sense of finality. Because that decision was a default, even though the Russian Federation did previously appear, that merely puts this case squarely in the Sudan v. Owens line of cases and the Bell v. Helicopter line of cases. The issue must be looked at because the Russian Federation was a sovereign with a de novo, non-discretionary level of review. Even if not that, Mr. Lieberman and Chabad put in a case where a plaintiff under Rule 60B challenged jurisdiction in its own case, and the court still looked at that case. I'm referring to the Lee Memorial case. In that case, it wasn't finality. The jurisdictional question was reviewed again under a different standard, and one which we don't believe applies here, the arguable basis test. We believe it would be the Bell helicopter test, but the notion that no party can ever challenge the 2010 decision on jurisdiction doesn't square with Lee or Bell. Actually, that's not the argument being made. It's whether or not tenants can challenge it through Rule 50B. That is a secondary argument as far as I'm concerned. You're stating the statement very broadly, and that's not what we're discussing here. The chief judge's questions didn't imply that. Whenever 10M can challenge jurisdiction in this case, and I think it's clear from Vera and other cases that it is entitled to challenge subject matter jurisdiction, I just want to be clear that we disagree with Mr. Lieberman's argument that there's no way to revisit the 2010 decision taking place. Well, actually, he suggested, and in his brief appellee suggests ways that this can come up. Right. We think we do satisfy the standing test because, again, of the allegations of that kind of relationship, I would not call 10M a legal representative, but that a privity relationship satisfies the legal representative prong of 60B. For that reason, 10M should be able to raise it in this context, and if not this time- No, you're not claiming tenant is a legal representative. You're not claiming tenant is a party. 10M is an entity alleged to be in privity. There are cases that hold that a privity relationship makes a party a legal representative. I don't want to necessarily use that word without noting that the definition of it is quite broad. Okay. Let me make sure my colleagues don't have additional questions for you, please. Ms. Koniecki? Thank you, Council. Thank you to all Council. We'll take this case under submission.
judges: Srinivasan, Rogers, Sentelle